## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN BECKETT,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

CIVIL ACTION NO. 3:20-cv-01147

(SAPORITO, M.J.)

### MEMORANDUM

In this matter, the plaintiff, Susan Beckett, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I.   BACKGROUND

On January 23, 2017, Beckett protectively filed a claim for supplemental security income asserting a disability onset date of January 2, 2017. The claim was initially denied by state agency reviewers on July 3, 2017. The plaintiff then requested an administrative hearing.

A video hearing was subsequently held on February 28, 2019, before an administrative law judge, Shawn Bozarth (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Johnathan C. De Luna (the "VE"). The plaintiff was represented by counsel at the hearing.

On March 21, 2019, the ALJ denied Beckett's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Beckett was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Beckett had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that Beckett had the severe impairments of: status-post vascular accident to the brain, obesity, chronic liver disease, obstructive sleep apnea, and intellectual disorder. At step three, the ALJ found that Beckett did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Beckett's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Beckett had the RFC to perform "sedentary work" as defined in 20 C.F.R. § 416.967(a)[1] with the following limitations:

> [T]he claimant could occasionally balance, crouch, crawl, stoop, bend, or kneel and occasionally climb stairs or ramps. The claimant could not climb ladders, ropes, or scaffolds or walk on uneven surfaces or operate a motor vehicle. The claimant should not be exposed to unprotected heights, dangerous or moving machinery and machine parts. She could frequently handle, finger, and feel with her left, upper extremity. The claimant should avoid concentrated exposure to respiratory irritants such as chemicals, dust odors, fumes and gasses, extremes of temperature and humidity as well as poorly ventilated work areas. The claimant would be capable of work with simple, routine, and repetitive instructions in low stress jobs which are jobs that are defined as goal oriented and not done at an assembly line or at a production quota pace, a job in which the claimant is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine, and a job in which she has only occasional contacts with

---

[1] The Social Security regulations define "sedentary work" as a job that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

supervisors, co-workers, and customers.

(Tr. 26.)

In making these factual findings regarding Beckett's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered each of the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, the ALJ concluded that Beckett had no past relevant work. Next, the ALJ concluded that, considering Beckett's age, education, work experience, RFC and the testimony of the VE, there existed jobs in significant numbers in the national economy that Beckett could perform, such as a document preparer, DOT 249.587-018, a grinding machine operator, DOT 690.685-194, and an addressing clerk, DOT 209.587-010. Based on this finding, the ALJ concluded that Beckett was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on May 12, 2020,

making the ALJ's March 2019 decision the final decision of the Commissioner subject to judicial review by this court.

Beckett timely filed her complaint in this court on July 7, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Beckett asserts on appeal that the ALJ's decision is not supported by substantial evidence because the ALJ's conclusion that Beckett can occasionally balance and stoop is erroneous. The conclusion is erroneous for several reasons: (1) the RFC is contrary to the opinions of the treating

officials; (2) the ALJ erred in his analysis of Dr. Jenouri; (3) the opinion of State Agency Physician, Dr. Scovern does not constitute substantial evidence for the RFC; (4) the ALJ's finding that Beckett would never be off task or absent is erroneous; and (5) the ALJ's errors are prejudicial.

## A. Evaluation of Medical Opinions

Beckett contends that the ALJ erred in assigning the weight to the opinions offered by treating sources, Megan Penfield, M.D. and Dr. Hasseem, consultative examiner Dr. Jenouri, and state agency expert Henry Scovern, M.S. (Doc. 21, at 7-14). As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, Beckett originally filed her administrative claim for benefits in January 2017. Thus, the old regulatory framework governing the evaluation of medical opinions evidence applies to this case.[2]

The Commissioner's regulations set standards for the evaluation of medical evidence and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

---

[2] The Commissioner adopted new regulations for how the ALJ will evaluate medical opinion evidence for cases filed after March 27, 2017. See 20 C.F.R. § 404.1520c. Because this case was filed in January 2017, the old regulations apply. See 20 C.F.R. § 404.1527.

impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to afford competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it

is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c). These benchmarks, which emphasize consideration of the nature of the treating relationship, also call for careful consideration of treating source opinions.

Indeed, this court has often addressed the weight which should be afforded to a treating source opinion in a Social Security disability appeal and emphasized the importance of such opinions for informed decision-making in this field. Recently, we summarized the controlling legal benchmarks in this area in the following terms:

Under applicable regulations and the law of the Third Circuit,
a treating medical source's opinions are generally entitled to
controlling weight, or at least substantial weight. *See, e.g.*,
*Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing
20 CFR § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704
(3d Cir. 1981)). Oftentimes referred to as the "treating
physician rule," this principle is codified at 20 CFR
404.1527(c)(2), and is widely accepted in the Third Circuit.
*Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *See also Dorf
v. Bowen*, 794 F.2d 896 (3d Cir. 1986). The regulations also
address the weight to be given a treating source's opinion: "If
we find that a treating source's opinion on the issue(s) of the
nature and severity of your impairment(s) is well supported
by medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other substantial
evidence in your case, we will give it controlling weight." 20
CFR § 404.1527(c)(2). "A cardinal principle guiding disability,
eligibility determinations is that the ALJ accord treating
physicians' reports great weight, especially when their
opinions reflect expert judgment based on continuing
observation of the patient's condition over a prolonged period
of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)
(citations omitted); *See also Brownawell v. Commissioner of
Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing
to reject the treating physician's assessment, an ALJ may not
make "speculative inferences from medical reports and may
reject a treating physician's opinion outright only on the basis
of contradictory medical evidence and not due to his or her
own credibility judgments, speculation, or lay opinion."
*Morales v. Apfel*, supra at 317.

*Morder v. Colvin*, No. 3:16-CV-213, 2016 WL 6191892, at *10 (M.D. Pa.

Oct. 24, 2016).

Thus, an ALJ may not unilaterally reject a treating source's opinion

and substitute the judge's own lay judgment for that medical opinion.

Instead, the ALJ typically may only discount such an opinion when it conflicts with other objective tests or examination results. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion and the doctor's actual treatment notes justifies giving a treating source opinion little weight in a disability analysis. *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." *Tilton v. Colvin*, 184 F.Supp.3d 135, 145 (M.D. Pa. 2016). However, in all instances in social security disability cases the ALJ's decision, including any ALJ judgments on the weight to be given to treating source opinions, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. Indeed, this principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. §404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's

opinion"). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066)); *see also Morales*, 225 F.3d at 317.

In this case, we find that the ALJ adequately articulated his rationale.

### 1. *Dr. Penfield's and Dr. Hassen's Opinions*

First, Beckett argues the ALJ erroneously concluded she can "occasionally balance." (Doc. 21, at 9; Tr. 26). This determination, according to Beckett, is erroneous because every physician that treated or examined her limited her to no stooping or balancing. (Doc. 21, at 9). In making her claim, Beckett specifically references the opinions of her two treating physicians, Dr. Penfield and Dr. Hassen, alleging that the ALJ did not properly evaluate such opinions in line with the controlling regulations. (*Id.*).

We find that substantial evidence supports the ALJ's evaluations of both Dr. Penfield and Dr. Hassen. Both doctors are treating physicians and their opinions are generally afforded controlling weight. *See, e.g., Fargnoli*, 247 F.3d at 43 (finding that a treating medical source's opinions

are typically entitled to controlling weight, or at least substantial weight).

However, even though they were treating physicians, the ALJ afforded both opinions with limited weight because he found them inconsistent with the record. (Tr. 31). Both physicians used checkbox questionnaires to report that Beckett would be off task more than 33% of the time, she would be absent more than four days a month, and she could never balance or stoop. (Tr. 31, 1439-40, 1533-34). The ALJ has discretion to discount such check-box forms that present no supporting findings or explanations. *See Mason* 994 F.2d at 1065. See also 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion").

The ALJ discussed at length how the severe limitations outlined in the opinions were inconsistent with the record, which showed slow and steady improvement to Beckett's stroke and indicated strengthened and improved gait and no gross motor or neurological deficits. For example, a June 6, 2017 examination demonstrated Beckett was in no acute distress but she had a noted gait imbalance. (Tr. 1270-1271) She was able

to squat 50%, her stance was normal, she used no assistive devices, she needed no help changing for examination or getting on or off the exam table, and she was able to rise from the chair without difficulty. (Tr. 1270-1271). In August 2018, Beckett reported walking 30-45 minutes per day for the past month. (Tr. 1385).   In September 2018, Beckett reported exercising 30-45 minutes twice a day, which included walking, sit-ups, squats, and other exercises. (Tr. 1398).  Then, in January of 2019, Beckett reported feeling well, and that she had lost 20 pounds since her last visit from her exercise. (Tr. 1537).  A month later, she reported that she exercised by walking, using the stair stepper, the exercise bike, and doing planks and sit ups. (Tr. 1564). She did this twice per day and reported no gait abnormality. (Tr. 1565).

Accordingly, we find that substantial evidence supports the ALJ's evaluation of the opinions of Dr. Penfield and Dr. Hassen. The ALJ was within his right to assign a limited weight to these opinions if he determined they lacked supporting relevant evidence. Thus, his determination was reached based upon a correct application of the relevant law.

### 2. Dr. Jenouri's Opinion

In June of 2017, Dr. Jenouri examined Beckett. (Tr. 31). He opined that Beckett could lift/carry up to 10 pounds occasionally, sit for 6-hours in an 8-hour day, stand/sit for 1-hour in an 8-hour day, did not need a cane, cannot walk on uneven surfaces, can perform frequent reaching, handling, fingering, feeling with the right and occasional with the left, can occasionally operate foot controls bilaterally, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, never balance, stoop, kneel, crouch, crawl, never be exposed to hazards or operate motor vehicles, and she can have frequent exposure to pulmonary irritants, extreme temperature, vibration, and noise. (Tr. 31, 1269-83).

Upon review, the ALJ afforded significant weight to this opinion. (Tr. 31). The ALJ noted that Dr. Jenouri's opinion was generally consistent with his clinical findings. *Id.* He also explained that Dr. Jenouri's opinion was consistent with the treatment records and Beckett's own testimony regarding no use of a cane despite some balance issues, walking slowly on uneven surfaces because of a fear of falling, and recommendations from her treating providers to avoid driving. (Tr. 31, 46, 54-55).

The ALJ found that part of Dr. Jenouri's opinion was inconsistent, particularly the findings related to the occasional handling, fingering, and feeling limitation on the left hand. (Tr. 31). He noted that, although Beckett exhibited reduced strength on the left side, Dr. Jenouri submitted an addendum a week later indicating she exhibited no fine motor deficits. (Tr. 31, 1271, 1286). The ALJ cited this as his reasoning for giving less weight to this portion of Dr. Jenouri's opinion. (Tr. 31).

We find that substantial evidence supports the ALJ's evaluation of Dr. Jenouri's opinion. The ALJ is not obligated to accept an entire medical opinion verbatim. Rather, he may afford significant weight to the portions he deems consistent without adopting the others. *See Ward v. Astrue*, No. CIV.A. 10-240, 2010 WL 3522979, at *7 (W.D. Pa. Sept. 7, 2010) ("The more supported and consistent an opinion is with the record as a whole, the more weight will be given to the opinion"); *Reichelle v. Berryhill*, No. CV 17-4995, 2018 WL 5784555, at *1 (E.D. Pa. Nov. 5, 2018) ("Considering the record as a whole, an ALJ is permitted to reduce the weight afforded to a medical opinion because of conflicting record evidence").

Indeed, as the ALJ also noted, after Dr. Jenouri's evaluation in June 2017, the record shows that Beckett's capabilities have only improved and she was exercising (and even performing planks and squats) for an hour per day on a regular basis. (Tr. 31, 1398, 1434, 1435, 1564).

Accordingly, we find the ALJ's evaluation of Dr. Jenouri's opinion is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. Dr. Scovern's Opinion

On June 23, 2017, State agency medical consultant Dr. Scovern examined Beckett and noted that she was capable sedentary work with additional postural and manipulative limitations. (Tr. 31, 77).

The ALJ gave limited weight to Dr. Scovern's opinion. (Tr. 31). He noted Beckett had made significant progress since her January 2017 hospitalization. *Id.* The ALJ noted recent physical examination treatment records which indicated Beckett had no significant musculoskeletal or neurological deficits (Tr. 31, 1380, 1388, 1401, 1541, 1547, 1553, 1565). Beckett also reported no need for an assistive device for balance or ambulation even though she still walked slowly on even

surfaces due to a fear of falling. (Tr. 31, 46, 55). The ALJ pointed out that Beckett's RFCs included greater exertional, postural, and environmental limitations to account for her reported weakness, unsteadiness, and general fatigue. (Tr. 26, 31).

Accordingly, we find the ALJ's evaluation of the opinion of state agency medical consultant, Dr. Scovern, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 4. The ALJ's RFC Finding

Beckett claims the ALJ erred in not assigning off-task time in the RFC, which Drs. Penfield and Hassen provided opinions. (Doc. 21, at 17). According to Beckett, the ALJ erred in his assessment that Drs. Hassen and Penfield overstated the amount of time she would be off-task and/or absent, because there were no other medical opinions in the record on this point. (Doc. 21, at 17).

The RFC is the most that an individual can do despite her functional limitations. *See* 20 C.F.R. § 416.945. An RFC is an administrative finding which the ALJ alone is responsible for making based on the record. *See* 20 C.F.R. § 416.946(c) (explaining that the RFC

assessment is not a medical opinion, but rather an opinion on issues reserved to the Commissioner that is entitled to "any special significance"); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (stating an individual's RFC is not a medical issue regarding the severity of a claimant's impairments, but is instead an administrative finding.). *See also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The ALJ...must make the ultimate disability and RFC determinations.").

We find that substantial evidence supports the ALJ's RFC determination. The ALJ appropriately afforded limited weight to the opinions that were not supported by the record. Importantly, the ALJ is not required to obtain matching opinion evidence to determine an individual's RFC. *Myers*, 373 F. Supp. 3d at 538. *See also Vargas v. Berryhill*, No. 16-2003, 2018 WL 1938312, at *8-9 (M.D. Pa. Mar. 13, 2018) ("In executing his administrative fact-finding duty, an ALJ does not reach a decision based on 'improper lay opinion regarding medical evidence' for lack of matching expert opinion evidence").

The Third Circuit has made this clear. *See Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006) (Finding no error for deviating from

medical opinions, where the ALJ crafted an RFC more restrictive than contemplated by a physician); *see also Chandler*, 667 F.3d at 361 ("The ALJ must make the ultimate disability and RFC determinations."); *Prall v. Colvin*, 3:12-CV-01681, 2014 WL 2579642, at *8 (M.D. Pa. June 9, 2014) ("Significantly, no physician ever opined that Prall's physical limitations were greater than the ALJ found them to be.") (citing *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("Importantly, [the claimant] does not point to any relevant medical opinion that supports [her] allegations that [her] pain and exertional limitations are more severe than the ALJ found them to be.")).

The ALJ appropriately afforded limited weight to Drs. Penfield and Hassen's checkbox form opinions that were not supported by the record. There was no need for a matching medical opinion on Beckett's off-task time. Accordingly, we find the ALJ's RFC assessment was supported by substantial evidence and was reached based upon a correct application of the relevant law.

### B. The Hypothetical Presented to the VE Fully Captured All Established Limitations. No More Was Required.

Beckett lastly argues that, because the ALJ allegedly failed to fully account for all her functional limitations, specifically with respect to the

opinions by the doctors all discussed above, the ALJ should have included the limitations in the hypothetical presented to the VE. (Pl.'s Br. at 16-18).

We find that Beckett's argument is without merit. A hypothetical question need only reflect those credibly established functional limitations that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The Third Circuit "does 'not require an ALJ to submit to the [VE] every impairment alleged by a claimant.' Rather, the ALJ is only required to submit credibly established functional limitations. Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Zirnsak v. Colvin*, 777 F.3d 607, 61 (3d Cir. 2014) (citation omitted) (emphasis in original). The ALJ's RFC determination did capture all of Beckett's credibly established mental and physical limitations (specifically, her ability to stoop/bend and her ability to stay on task) and the ALJ was not required to adopt any additional limitations alleged.

Accordingly, we find the ALJ's adoption of the VE's hypothetical question was supported by substantial evidence and was reached based

upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Beckett was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disabiity benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: March 18, 2022

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge